USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
RAMON BERRIOS,                                                :
                                    Petitioner,               :
                                                              :    14 Civ. 8959 (LGS)
            -against-                                         :
                                                              :    **OPINION AND ORDER**
CITY OF NEW YORK,                                             :
                                    Respondent.               :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Petitioner brings this *pro se* petition (the "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for Attempted Robbery in the First and Second Degree, Robbery in the First Degree, and Assault in the Second Degree. This case was referred to the Honorable Debra Freeman for a report and recommendation (the "Report"). The Report was issued on May 24, 2018, and recommends that the Petition be dismissed. Petitioner timely submitted an objection to the Report. For the reasons set forth below, the Report is adopted in full and the Petition is dismissed.

I. **BACKGROUND**

   A. **Relevant State Court Proceedings**

Petitioner, 39-year-old Ramon Berrios, was indicted and tried in connection with two separate incidents that occurred on the same night. Only the first incident is relevant to this discussion -- the attempted robbery of Riley Norris, resulting in Petitioner's conviction for Attempted Robbery in the First and Second Degrees. The facts relevant to that incident are summarized below.

### 1. Norris's Grand Jury Testimony

Norris testified in the grand jury[1] that on May 15, 2009, at about 1:00 A.M., he noticed that two men were following him -- one directly behind him and another walking on the opposite side of the street. Both men were "Latin," and, although Norris was "guessing" their age, he estimated that they were "pretty young," younger than Norris, who was 32. Norris stated that the man behind him said he needed money and shoved him into a wall, assisted by two other men, including the one who had been across the street. The first man demanded, "Give me your stuff." When Norris refused, the first man displayed a "silver" gun and "stuck it" into Norris's "stomach." Norris responded that the man was wasting his time because Norris "didn't have anything on [him]." Upon observing a car that Norris thought looked similar to a police car, he pointed at it and screamed, "Police." The three men "started backing off" and walked away together. Norris testified that later the same day, he went to the precinct stationhouse. Norris confirmed that he viewed three separate lineups. Norris testified that he had identified the second attacker who initially had been across the street, Angel Nieves. He did not testify about the other two lineups in which he failed to identify Petitioner and the third assailant.

### 2. The Trial and Direct Appeal[2]

On March 20, 2010, Nieves (the accomplice whom Norris had identified in a lineup) testified for the prosecution as a cooperating witness at trial. His trial testimony included the

---

[1] The description of Norris's grand jury testimony is taken from the People's memorandum of law to the Appellate Division, First Department. The Government represents that it has been unable to obtain the grand jury transcript, and Petitioner does not object to the People's narrative summary of the testimony before the First Department. The Court therefore relies on that summary for purposes of this review. *See Neil v. Walsh*, No. 07 Civ. 6685, 2009 WL 382637, at *4 n.4 (S.D.N.Y. Feb. 17, 2009) (relying on narrative summary of sentencing transcript); *Stevenson v. Strack,* No. 96 Civ. 8429, 1999 WL 294805, at *1 n. 1 (S.D.N.Y. May 11, 1999) (relying on narrative summary of trial transcript).

following: Nieves was 19 years old, and Petitioner was about 20 years older. Petitioner was dating and staying with Nieves's mother. Petitioner came up with a plan that Nieves, Nieves' friend John Martires, and Petitioner would rob someone in Manhattan around Central Park. That night, on May 15, 2009, around 1:00 A.M., on Lexington Avenue, Petitioner approached Norris "from the back, and pulled out [a] gun, and cocked it, and . . . tried to put it to his head . . . but the guy turned around." Petitioner told Norris, "Give me your shit," and Norris replied, "I don't have anything; you're wasting your time." At that point, Norris began waving and yelling, "Police, Police." In response, Petitioner, Nieves and Martires ran away. Police officers apprehended Nieves and Martires in Central Park the same night. Petitioner told Nieves that he was going to run from the police because he had a gun. Petitioner was apprehended the next morning at home.

Other evidence at trial included testimony from Jose Rivera, a filler in a lineup that included Petitioner, who testified that he had overheard Petitioner admit that he had robbed a guy on Lexington Avenue and that his step-son must have given him up. Also in evidence were surveillance photos and video showing Petitioner, Nieves and Martires together on the streets of Manhattan on the night of the incident.

The prosecution was unable to secure Norris's testimony at trial. Petitioner's counsel asked to introduce Norris's grand jury testimony in order show that Norris had not identified Petitioner in the lineup. The trial court denied this request, noting that the jury already knew from Detective Hicks about Norris's failure to identify Petitioner. On April 5, 2010, the jury found Petitioner guilty on all counts.

Petitioner filed a direct appeal to the Appellate Division, First Department, and argued among other things that the exclusion of Norris's grand jury testimony denied Petitioner's due

3

process right to present a defense. On June 27, 2013, the Appellate Division affirmed Petitioner's conviction and sentence. *People v. Berrios*, 968 N.Y.S.2d 78 (1st Dep't 2013). Regarding Petitioner's due process argument, the Appellate Division held that Petitioner's federal constitutional claim was unpreserved. *Id*. at 79. As an alternative holding, the Appellate Division found that "any error in excluding [Norris's grand jury testimony] was harmless beyond a reasonable doubt because there was overwhelming evidence of [Petitioner's] guilt and the omitted evidence [did not] create[] a reasonable doubt that did not otherwise exist." *Id*. (internal quotation marks and citation omitted). On December 6, 2013, the Court of Appeals denied Petitioner leave to appeal. *People v. Berrios*, 4 N.E.3d 384 (2013).

### B. The Petition, the Report and Petitioner's Objection

On November 3, 2014, Petitioner filed the Petition for habeas relief reiterating the claims he had raised unsuccessfully on direct appeal, that (1) the exclusion of Norris's grand jury testimony denied Petitioner's due process right to present a defense; (2) Petitioner received ineffective assistance of counsel because his lawyer failed to advocate for him at his sentencing hearing; and (3) Petitioner's sentence was unduly harsh and excessive. On August 27, 2015, Petitioner filed a reply (the "Reply"), elaborating on the arguments in the Petition but also making new arguments.

On May 24, 2018, Judge Freeman issued the Report recommending that (1) to the extent Petitioner's claim of ineffective assistance at sentencing is based on facts outside the trial record the claim is unexhausted, and should be deemed deleted from the Petition and not considered in this proceeding; (2) the remaining claims in the Petition should be dismissed for the following reasons: first, Petitioner's due process claim based on the exclusion of Norris's grand jury testimony is procedurally barred, and it fails on the merits. Second, to the extent Petitioner's

ineffective assistance of counsel claim is based on the trial record, it fails on the merits. Third, Petitioner's excessive sentencing claim should be dismissed as non-cognizable. The Report also recommends that the Court not consider claims raised by Petitioner for the first time in the Reply. On June 20, 2018,[3] Petitioner filed a "Reply An[swer]" arguing that "the exclusion of his victim's statement [at] the time of the crime deprived Petitioner of his right to present a defense. The document takes issue with the exclusion of Petitioner's "victim[']s original statement." Petitioner argues that admitting the statement would have supported the defense of mistaken identity, because the victim's description of the robber was at odds with Petitioner's actual physical appearance. This document is construed as Petitioner's Objection to the Report (the "Objection"), and specifically to the Report's rejection of Petitioner's due process claim based on the exclusion of prior testimony, i.e., Norris's grand jury testimony. To the extent that the Objection is challenging the exclusion of some other evidence and introducing an argument not raised below, it need not be addressed here.[4] *See Walker v. Stinson*, 205 F.3d 1327 (2d Cir. 2000) (holding that a district court did not abuse its discretion in refusing to consider an argument that a petitioner failed to raise before a magistrate judge); *accord Minto v. Decker*, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015) ("[A]n unsuccessful party is not entitled as of right to a *de novo* review by the judge of an argument never seasonably raised before the magistrate.").

---

[3] Even though the document was filed almost a month after the filing of the Report, it is assumed that it was a timely filed objection.
[4] Petitioner's filing implies that the excluded statement was made by the female victim involved in the second incident, a purse snatching and assault, at issue at the trial. According to Petitioner's filing, "moments after the crime occurred," "the complainant/victim described *her* assailant as a Black man in his 20's 30's where [Petitioner] is white Hispanic [and] significantly older than that" (emphasis added). However, the Court is unaware of any such statement or its suppression at trial. The issue was not raised on direct appeal, nor in the Petition, and it consequently was not addressed in the Report.

5

Petitioner also argues that his "arrest photograph" should have been shown to the jury to provide a visual display of Petitioner's appearance in contrast with the victim's description.

## II. LEGAL STANDARD

### A. Review of a Magistrate Judge's Report and Recommendation

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection,' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

A district court must conduct a *de novo* review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. 28 U.S.C. § 636(b)(1); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). "When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error." *Espada v. Lee*, No. 13 Civ. 8408, 2016 WL 6810858, at *2 (S.D.N.Y. Nov. 16, 2016), *appeal dismissed* (Mar. 1, 2017). Further, a district court should not entertain new grounds for relief or additional legal arguments that were not before the magistrate judge. *See Walker*, 205 F.3d at 1327 (holding that a district court did not abuse its discretion in refusing to consider an argument that a petitioner failed to raise before a magistrate judge); *accord Kriss v. Bayrock Grp., LLC*, No. 10 Civ. 3959, 2015 WL 1305772, at *1 (S.D.N.Y. Mar. 23, 2015).

B.  **Review of Habeas Corpus Petition**

Where an individual is in state custody following the judgment of a state court, the writ of habeas corpus is available only if that individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(b)(1)(B). Before a federal court can consider a habeas petition, a petitioner must first exhaust his claims in state court unless there is no available state corrective process or that process would be "ineffective to protect the rights of the applicant." *Id.* Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Pierotti v. Walsh*, 834 F.3d 171, 176 (2d Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

The standard for evaluating state court decisions is highly deferential. Where a state court has reached the merits of a federal claim, habeas relief under § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). "A state court's determination that a claim lacks merit" is not unreasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Ramos v. Racette,* 726 F.3d 284, 287–88 (2d Cir. 2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)); *accord Hall v. Lee*, No. 15 Civ. 2559, 2016 WL 4597624, at *2 (S.D.N.Y. Sept. 1, 2016). If the petitioner is proceeding *pro se*, "courts should review habeas petitions with a lenient eye, allowing borderline

cases to proceed." *See Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *accord Fulton v. Baltazar*, No. 16 Civ. 6085, 2018 WL 389097, at *4 (S.D.N.Y. Jan. 11, 2018).

## III. DISCUSSION

### A. Merits of Due Process Claim

The Report concludes that the exclusion of Norris's grand jury testimony, whether or not erroneous, does not violate Petitioner's due process rights. This conclusion is not clearly erroneous and is adopted. As the Objection merely reiterates the arguments made below in the Petition and Reply, the applicable standard of review is clear error. *See Espada*, 2016 WL 6810858, at *2.[5]

In his Petition and Reply, Petitioner argues that the trial court erred in excluding Norris's grand jury testimony because it undermined his ability to (1) demonstrate that Norris failed to identify Petitioner in a line-up; (2) show inconsistencies between Norris's version of the events and the testimony of the prosecution's witness, Nieves; and (3) highlight contradictions between Petitioner and Norris's description of his assailants. The Report rejected these arguments, concluding that any error made by the trial court in excluding the Norris grand jury testimony did not rise to the level of a federal constitutional error.

A two-step inquiry determines whether the trial court's exclusion of evidence violates due process rights by depriving a petitioner of his right to present a defense: (1) whether the state court violated a state evidentiary rule in excluding evidence, and if so, (2) whether that exclusion rose to the level of constitutional error. *See Wade v. Mantello*, 333 F.3d 51, 60 (2d Cir. 2003);

---

[5] To the extent the Objection is challenging the exclusion of other evidence not addressed in the Petition or Reply, they need not be addressed. *See Walker*, 205 F.3d at 1327 (holding that a district court did not abuse its discretion in refusing to consider an argument that a petitioner failed to raise before a magistrate judge).

*accord Williams v. Jacobson*, No. 15 Civ. 5319, 2016 WL 4154700, at *13 (S.D.N.Y. Aug. 5, 2016). The erroneous exclusion of evidence rises to the level of a constitutional error "only when the petitioner can show that the error deprived her of a fundamentally fair trial." *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (quoting *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004)); *accord Silvestre v. Capra*, No. 15 Civ. 9425, 2018 WL 3611988, at *31 (S.D.N.Y. July 27, 2018). The test for fundamental fairness is "whether the [excluded] evidence, evaluated in the context of the entire record, creates a reasonable doubt regarding the petitioner's guilt that did not otherwise exist." *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (internal citations and quotations omitted); *accord DeJesus v. Superintendent of Attica Corr. Facility*, No. 17 Civ. 3932, 2017 WL 6398338, at *28 (S.D.N.Y. Dec. 13, 2017).

Viewed in the light of the other evidence in the trial record, the grand jury testimony would not have created reasonable doubt in the jury's mind as to Petitioner's guilt. First, as to the lineup, Norris's grand jury testimony is cumulative of other trial evidence. Petitioner wanted to use the grand jury testimony to show that Norris did not identify Petitioner in a lineup, but Detective Hicks testified to this fact during trial.

Second, as to alleged inconsistencies between Norris and Nieves, the accounts of the two witnesses largely mirror one another. Both stated that Petitioner approached Norris with a silver gun and ordered Norris to hand over his "stuff", that Norris told his assailants that he didn't have anything on him and they were wasting their time, and that Norris shouted "Police," which scared the three men away. The two discrepancies between Nieves's and Norris's accounts are minor. While Norris testified that one man pointed the gun at his stomach, Nieves stated the same man pointed the gun at the victim's head. Also, Norris stated that although he was "guessing" at age, the men appeared "pretty young," younger than Norris, whereas Petitioner is

9

39 years old.  Given the many consistent details between Norris's and Nieves accounts, as well as the other evidence supporting Petitioner's conviction, it was not clearly erroneous for the Report to find the discrepancies do "not compel the conclusion that the jury would have reached a different verdict had it heard the grand jury's testimony or that the exclusion of the testimony undermined the fairness of Petitioner's trial."

Third, with respect to Norris's allegedly erroneous description to the grand jury of Petitioner's race and ethnicity, Norris's correctly identified his assailants as "Latin" or Hispanic, rather than Black.

The Report is not clearly erroneous in finding that the exclusion of Norris's grand jury testimony fails to rise to the level of constitutional error.  For substantially the same reasons, Petitioner's claims would fail under a *de novo* standard of review as well.

In his Objection, Petitioner also contends that his "arrest photograph" would have contradicted Norris's description of his assailant and bolstered his mistaken identity defense, but it was mistakenly excluded.  The Petition and Reply do not mention the photograph at all, and thus, this portion of the Objection need not be considered.

Petitioner's objections to the Report are overruled, and this portion of the Report is adopted.

### B. Remainder of the Report as to Which No Objection was Made

The Objection does not address the remainder of the Report -- i.e., the Report's discussion and recommendation concerning all the other aspects of the Petition apart from the merits of the due process claim.  Having reviewed the remainder of the Report, the Court finds that the factual and legal bases supporting its findings and conclusions are not clearly erroneous or contrary to law.  Accordingly, the Court adopts the remainder of the Report.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Objection to the Report is OVERRULED. The Report is ADOPTED in full. To the extent Petitioner's claim that his counsel was ineffective at sentencing is unexhausted, that claim is deemed deleted from the Petition. The Petition for a Writ of Habeas Corpus is DISMISSED. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 USC § 2253.

The Clerk of Court is respectfully directed to close this case and mail a copy of this Opinion and Order to *pro se* Petitioner.

Dated: September 25, 2018
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**